IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD B. BUTLER,

    Petitioner,           No. CIV S-99-1405 LKK KJM P

  vs.

G. A. MUELLER, Warden, et al.,

    Respondents.       FINDINGS AND RECOMMENDATIONS

_____/

       Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus under 28 U.S.C. § 2254. Respondents' July 6, 2006 amended motion to dismiss is before the court.

I. Background

       On September 3, 1999, respondents filed a motion to dismiss this action as time-barred. See Docket Entry #5. On June 22, 2000, Magistrate Judge John F. Moulds issued findings and recommendations, recommending that respondent's motion be granted and that this action be dismissed. See Docket Entry #46. The findings and recommendations were adopted by the district judge assigned to this case on September 21, 2000 and this action was dismissed. See Docket Entry #53. On December 19, 2001, the Ninth Circuit Court of Appeals reversed and remanded, finding that petitioner's federal petition was timely filed. See Docket Entry #71.

1

## II. Reconsideration

Respondents request that the court revisit the question of whether this action is time-barred in light of changes in controlling law.  See Sch. Dist. Number. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (reconsideration is appropriate if there is an intervening change in controlling law).  Because the law has changed significantly with respect to statutes of limitations issues in § 2254 cases since the Ninth Circuit reversed and remanded, this court will recommend that the issue of whether petitioner's habeas action is time-barred be reconsidered.  This court further will recommend that, upon reconsideration, respondents' amended motion to dismiss this matter as time-barred be granted.

## III. Amended Motion To Dismiss

In his 2000 findings and recommendations, Judge Moulds found that the limitations period applicable to this action began to run on October 14, 1996[1] and then ran at least until April 19, 1997.  There is no cause to revisit these findings made by Judge Moulds.

Judge Moulds then addressed whether a Superior Court application for writ of habeas corpus filed by petitioner on or around April 19, 1997 could serve to toll the limitations period under 28 U.S.C. §2244(d)(2):[2]

> On April 19, 1997, petitioner filed a petition for writ of habeas corpus in the state superior court. [Footnote omitted.]  Thereafter, collateral challenges to exhaust petitioner's federal claims were pending in the state courts through June 21, 1999, when the California Supreme Court denied petitioner's second state habeas petition filed in that court, thus exhausting his state court remedies.  See Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999) (where habeas petitioner is attempting to exhaust state remedies, "the statute of limitations is tolled from the time the first state habeas

---

[1] Respondents do not ask that the court reconsider the date upon which the limitations period began.  Am. Mot. at 5:1-8.

[2] Title 28 U.S.C. § 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

2

petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge.") [Footnote omitted.]

Respondents, relying on Dictado v. Ducharme, 189 F.3d 889 (9th Cir. 1999), argue that neither petitioner's state superior court petition nor the two habeas corpus petitions filed in the California Supreme Court operate to toll the statute of limitations because they were all denied on procedural grounds and thus were not "properly filed" in the state courts. In Dictado, the court of appeals held that a properly filed application within the meaning of 28 U.S.C. § 2244(d)(2) means "an application submitted in compliance with the procedural laws of the state in which the application was filed." Id. at 892. Respondents argue that because the Sacramento County Superior Court and the California Supreme Court denied petitioner's state habeas petitions in whole or in part on procedural grounds those petitions were not "properly filed."

Petitioner filed his first state habeas petition on April 19, 1997 in the Sacramento County Superior Court. On August 19, 1997, the superior court issued an order denying the petition on the grounds that petitioner had not excused his seven year delay in bringing the petition by establishing due diligence. (Exhibit E to Attachment 5 to Respondents' Motion to Dismiss, filed September 3, 1999, In the Matter of Ronald Butler, Case No. 97F03293, slip op. at 3-5.) In the alternative, the court held that the petition presented claims already rejected on appeal and claims that should have been but were not raised on direct appeal. (Id. at 5-7.)

In Dictado, the United States Court of Appeals for the Ninth Circuit held that a properly filed application within the meaning of 28 U.S.C. § 2244(d)(2) means "an application submitted in compliance with the procedural laws of the state in which the application was filed." Id. at 892. The court held that a habeas corpus petition denied by the state supreme court as time-barred and successive was not "properly filed" within the meaning of § 2244(d)(2). Id. at 891-92.

The state court decision at issue in Dictado involved a merits determination that evidence presented by Mr. Dictado in the time-barred petition did not qualify as "newly discovered evidence" because there was no showing that the evidence could not have been discovered and presented years earlier and because the evidence would not have changed the result of the petitioner's trial. Dictado, at 894 (Browning, J., dissenting) (quoting In re Dictado, No. 65198-1 at 2-3). Here, too, the state superior court's principal ground for rejecting the petition was that it was untimely and that petitioner had not shown due diligence in bring [sic] his claims. (In the Matter of Butler, slip op. at 3-5.) The decision in Dictado controls the determination whether petitioner's state superior court

> petition was properly filed; under Dictado, it was not. Accordingly, the state superior court petition does not toll the statute of limitations.
>
> For the same reason, petitioner's September 4, 1997 request to the superior court for reconsideration of its August 19, 1997 order does not toll the statute of limitations. In its March 19, 1998 order denying the request for reconsideration, the court again found that petitioner had not offered evidence sufficient to excuse his delay in bringing the habeas corpus petition. (Exhibit E to Attachment 5 to Respondents' Motion to Dismiss, In re Butler, No. 97F03293, slip op. at 3-4.)
>
> Since petitioner's state superior court habeas corpus petition and his request for reconsideration thereof were not "properly filed," the first petition filed by petitioner that might have tolled the statute of limitations is the petition filed in the California Court of Appeal for the Third Appellate District. That petition was not filed until June 1, 1998. That date is more than one year after October 13, 1996. The statute of limitations had, therefore, expired by the time he filed his state court of appeal petition. Nothing in the statute suggests that the limitations period of § 2244(d) is revived by the filing of a state habeas corpus petition after expiration of the federal limitations period. [Footnote omitted.]

Docket Entry #46 (June 22, 2000 Findings And Recommendations) at 5:5-7:21.

With respect to the issue of whether petitioner was entitled to tolling while his Superior Court habeas application was pending, the Ninth Circuit found as follows:

> The AEDPA's limitations period is statutorily tolled during the time that a "properly filed application" for post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). Relying on Dictado v. Ducharme, 189 F.3d 889, 892 (9th Cir. 1999) ("Dictado I"), withdrawn, 244 F.3d 724, 726 (9th Cir. 2001), the district court held that Butler was not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) because his state habeas corpus petitions contained claims that were procedurally barred, and thus were not "properly filed." Subsequently, the Supreme Court held that a "properly filed application" within the meaning of § 2244(d)(2) need not contain claims that are free of procedural bar. Artuz v. Bennett, 531 U.S. 4, 8-10 (2000). Thereafter, we withdrew Dictado I and conformed our circuit law to the intervening Supreme Court decision. Dictado v. Ducharme, 244 F.3d 724, 726-27 (9th Cir. 2001) ("Dictado II"). Under Bennett and Dictado II, Butler's state habeas corpus petitions tolled the AEDPA's one-year limitation period.

Docket Entry #71 (November 26, 2001 Memorandum Order) at 2-3.

4

After the Ninth Circuit's opinion in this case, the Supreme Court decided that an untimely state court application for collateral relief will not provide a basis for tolling under 28 U.S.C. § 2244(d)(2) because such applications are not "properly filed." Pace v. DiGuglielmo, 544 U.S. 408, 414-15 (2005). In light of Pace, petitioner's first Superior Court filing does not serve to toll the limitations period applicable to this action. Petitioner did not file any other state habeas actions in time to provide tolling for the limitations period. Therefore, absent "equitable tolling," this action is time-barred.

"Equitable tolling" of the limitations period is appropriate when extraordinary circumstances beyond a habeas petitioner's control make it impossible for him to file on time. See, e.g., Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005). Petitioner bears the burden of showing equitable tolling is appropriate. Id. Petitioner claims that he is entitled to equitable tolling beyond October 14, 1996 for the time it took petitioner to develop his claims by reading his trial transcripts, formulate ideas as to how to proceed, obtain expert testimony and obtain documents from agencies such as the Sacramento County District Attorney. Opp'n at 24-26. Petitioner claims all of these efforts were hampered by the fact that he was in prison.

None of the circumstances cited by petitioner is extraordinary. See Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999) (ignorance of the law, incarceration and pro se status does not excuse prompt filing of habeas petition). This court observes that many if not most habeas petitioners prepare their petitions under the same constraints as petitioner faced. While not all habeas petitioners seek to obtain expert testimony to support their petitions, petitioner simply has not shown that he could not accomplish all that he needed to, even though incarcerated, within the limitations period. Petitioner is not entitled to equitable tolling.

Petitioner also argues that this court should excuse petitioner's late filing under the actual innocence exception recognized in Schlup v. Delo, 513 U.S. 298 (1995). Opp'n at 2-23. The Schlup exception allows a petitioner to proceed with an otherwise procedurally

5

defaulted habeas petition if he can show that, in light of all the evidence, including evidence not produced at trial, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Id. at 327.[3]

Petitioner claims that he can meet the Schlup exception with respect to his conviction for second degree murder: "[Petitioner] contends that he is allowed to pass through the [Schlup] 'gateway' to the underlying claims upon his presentation of new, reliable evidence which undermines confidence in the trial verdict to such an extent that [this] court should find it more likely than not that no reasonable juror would have voted to convict [petitioner] of second degree murder in light of the new evidence." Opp'n at 2:7-11.

In his opposition, petitioner discusses physical evidence such as the positioning of the victim's body after he was shot, ballistics information and the location of the victim's blood. It is not entirely clear from petitioner's opposition what exactly constitutes the "new, reliable evidence which undermines confidence in the trial verdict."[4] It appears the "new evidence" comprises 1998 declarations interpreting the ballistics evidence by criminalist Allan Gilmore, and weapons expert John Quintrall. Id. at 14:11-16, 17:5-27, 18:10-27. It also is not entirely clear how any facts suggested by any new evidence are material to the question of whether petitioner is guilty of second degree murder.

Petitioner appears to interpret his "new evidence" to suggest that when petitioner fired the shot that killed the victim, petitioner was only 16 inches from him. Opp'n at 13:3-14. But petitioner fails to show why this matters in any material respect. In other words, petitioner fails to show that the 16 inch distance leads to a conclusion that no reasonable jury would have found petitioner guilty beyond a reasonable doubt of second degree murder had it been presented

---

[3] The court notes however, that neither the United States Supreme Court nor the Ninth Circuit Court of Appeals has found that the actual innocence exception found in Schlup can save an otherwise time-barred habeas petition. Majoy v. Roe 296 F.3d 770, 776 (9th Cir. 2002).

[4] The California Court of Appeal's summary of the evidence presented at trial may be found between pages 2 and 11 of Exhibit D of respondents' March 29, 2002 answer.

6

1   with this evidence.  Even if the closer a victim is to his shooter the more likely there was a

2   struggle at the time of the shooting, this alone does not obviously exonerate petitioner.  Petitioner

3   has failed to establish he satisfies the Schlup exception.  Nothing in the record suggests there was

4   a struggle of such a magnitude so as to render improbable a verdict of second degree murder.[5]

5               Petitioner argues that certain of his new evidence suggests that the ballistics

6   evidence presented at trial by the prosecution was unreliable.  Opp'n at 17:4-18:8.  Again,

7   however, petitioner fails to indicate how this evidence allows him to pass through the Schlup

8   gateway.  Assuming petitioner's point here as well is that he shot the victim at close range,

9   making a struggle more probable, there still is nothing in the record to suggest there was a

10  struggle of a magnitude necessary to render improbable a verdict for second degree murder.

11              Finally, the court notes that petitioner points to the fact that the victim's mother

12  -- who also was petitioner's wife -- indicated before trial that there had been a struggle between

13  petitioner and the victim before or near the time of the shooting.  Opp'n at 22:9-23:9; see also

14  Am. Pet., Ex. F at 2-3; Clerk's Transcript (CT) at 21:2-27.  This information did not come out at

15  trial.  The victim's mother never testified one way or the other as to whether there was a

16  struggle.[6]

---

[5] The court notes that immediately after the shooting, petitioner told police officers that he did not know what happened with respect to the shooting of Dion: "I don't even know what happened, man. I, I, I don't you know, all I know is that there's blood on me, and . . . There's a bunch of shit that's going on.  That's all I know."  Clerk's Augmented Transcript on Appeal (CAT) at 4.  Petitioner changed his story at trial and testified in detail about the events of the evening Dion Pittman was shot.  Reporter's Transcript (RT) 666-785.  Petitioner's inconsistency made it reasonable for jurors to discount most of petitioner's testimony and especially those portions not corroborated by other testimony or evidence.

[6] On direct appeal, the California Court of Appeal summarized the testimony of the mother, Vivian Pittman, as follows:

> Defendant and Vivian Pittman were married in June 1984.  Her testimony at trial is as follows.  She and her son, Dion, resided with defendant until February 19, 1987; Dion was then 18 years old.  Defendant was employed by the postal service but had been home for two days with a cold.  Vivian Pittman left the house around 4:00 p.m., she left a note for defendant who was asleep.

In sum, petitioner fails to point to anything allowing the court to find that reasonable jurors would not have found him guilty of second degree murder for the killing of which he was convicted. Petitioner has presented evidence to the court that a struggle occurred either before the victim was shot or during the shooting. But petitioner fails to show that the existence of a struggle makes it more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt of second degree murder. In order to make such a showing, petitioner would have to present reliable evidence indicating not just that a struggle

---

> She did a family errand and then went to the home of friends. She telephoned to let defendant know where she was. He asked when she would be home and she said "soon." She arrived home soon after 7 p.m. Dion Pittman told her that defendant was not feeling well and was walking to the medical center, a 20 minute walk. She went back to her car and set off to find defendant. She saw him walking towards the medical center, about halfway there. She pulled over and asked if he wanted her to take him to the doctor. He said no. She turned around and went back home.
>
> Defendant telephoned about 10 or 15 minutes after she arrived at home. He wanted Vivian Pittman to come pick him up. She went to the convenience store where he was waiting. Defendant was upset. He was "hollering." He wanted to know where she had been all that time. She tried to explain. They argued all the way home. When they arrived at home defendant slammed the entry door quite hard. He said, "I'm going to kick your ass." Dion Pittman was standing nearby and said "No, you're not going to do anything to my mother." Defendant said, "We'll see about that. He walked away toward the bedroom.
>
> Defendant returned waving a handgun. Vivian Pittman said, "Oh, no, there's not going to be any of this." She went into the kitchen and dialed 911. She told the operator that there was a family disturbance and gave the address. Her back was turned; she heard Dion Pittman call out loudly, "Momma, get help, get help." She heard some shots; the next thing she saw was her son lying on the floor with a bullet wound in his chest. She dialed 911 again and said her son had been shot. She hung up the phone. . .
>
> . . . At no time during the course of these events did she arm herself with any kind of weapon, nor did she see Dion Pittman with any kind of weapon.

March 29, 2002 Answer, Ex. D at 2-4; RT 202-303.

occurred but that the struggle somehow rendered the victim's killing lawful or that petitioner did not posses malice aforethought when he shot Mr. Pittman.[7] Petitioner simply has not done that.[8]

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Respondents' July 6, 2006 motion for reconsideration be granted;

2. Respondents' July 6, 2006 amended motion to dismiss be granted; and

3. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 15, 2007.

*/s/ signature*
U.S. MAGISTRATE JUDGE

1
butl1405.157(c)

---

[7] In California, second degree murder is defined as "the unlawful killing of a human being with malice aforethought."  Cal. Penal Code §§ 187, 189.

[8] On pages 20 to 22 of his opposition, petitioner indicates why he believes the evidence does not show that he possessed the requisite mental state for second degree murder.  Petitioner's argument is based almost exclusively on his trial testimony and categorically ignores the testimony of Vivian Pittman.

9